IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA            :
                                    :
       v                            :   Crim. Case No. L-10-0131
                                    :
NEFTALI RAMOS                       :
                                    :

o0o
**MEMORANDUM**

Now pending is the Motion of the Defendant, Neftali Ramos, to Quash the Indictment in his case. Docket No. 27. The Court has carefully reviewed the papers and no hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, the Motion will be DENIED.

I.     **FACTUAL BACKGROUND**

In 2001 Neftali Ramos, then a lawful permanent resident of the United States and a Citizen of Mexico, was convicted in the United States District Court for the Eastern District of Virginia of Conspiracy to Possess and Distribute Cocaine, a felony. On February 12, 2003, Ramos was served with a Notice to Appear in removal proceedings before an Immigration Judge and charged with removal under §§ 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1227. These provisions provide for the removal of an alien who has been convicted of an aggravated felony or a drug trafficking offense.

1

The Immigration Judge ordered Ramos removed, and on April 22, 2003 Ramos returned to Mexico. Approximately two years later, he re-entered the United States and was subsequently arrested on an outstanding traffic warrant under the alias Andrei Martinez-Martinez. The instant case charges Ramos with illegal re-entry under 8 U.S.C. §1326(a), which provides for criminal penalties against removed aliens who re-enter the United States without the permission of the Attorney General.

Ramos now seeks to dismiss the indictment against him by collaterally attacking the underlying removal order.

## II. STANDARD OF REVIEW

The Immigration and Nationality Act provides that, in a criminal proceeding for illegal re-entry, an alien may challenge the validity of the underlying removal order under certain limited circumstances. The defendant must show that: (1) he exhausted any administrative remedies that may have been available to seek relief against the order, (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). "These requirements are listed in the conjunctive, so a defendant must satisfy all three in order to prevail." United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005).

## III. DISCUSSION

Ramos contends that these requirements are met because he was not advised of the charges against him and because he did not knowingly and intelligently waive his right to appeal the Immigration Judge's decision. Both assertions are belied by the record.

Defendants in removal proceedings may file an administrative appeal of the removal order with the Board of Immigration Appeals within 30 days of the date of the order. 8 C.F.R. § 1003.3. It is undisputed that Ramos never took such an appeal. Rather, he waived this right both explicitly, at his removal proceeding, and by departing the United States. See 8 C.F.R. §1003.3(e).

With regard to waiver, the following exchange took place at Ramos's removal proceeding:

> THE COURT: And do you understand, Sir, that you have the right to appeal any decision of the Court to a higher Court in Washington, D.C., and even after that to the federal court system of this country?
>
> MR. RAMOS: Yes, Sir.

Trans. at 6, Def.'s Mt. to Quash Ex. 1, Docket No. 27. Following the determination that Ramos was subject to removal, the Immigration Judge again informed Ramos of his appeal rights:

> THE COURT: Do you understand my decision, Sir?
>
> MR. RAMOS: Yes, Sir. I accept your offer, Sir.
>
> THE COURT: And you wish to accept that decision or reserve appeal?
>
> MR. RAMOS: I accept your offer, Sir. I will accept your offer, Sir.
>
> THE COURT: The decision?
>
> MR. RAMOS: Yeah.
>
> THE COURT: Very well. The decision of the Court is final.

Id. at 13.

This colloquy is sufficient to constitute a knowing and intelligent waiver of Ramos's right to appeal. The Immigration Judge's clarification remedied any ambiguity and established

3

that Ramos was accepting the decision of the Court. Moreover, Ramos was offered the opportunity to conduct the proceeding in Spanish but declined, saying that he spoke English and wished to proceed without a translator. See id. at 2.

By choosing not to avail himself of his right to appeal to the Board of Immigration Appeals, Ramos failed to exhaust his administrative remedies. Moreover, because Ramos was aware of, and waived, his right to appeal, the removal proceeding did not improperly deprive him of the opportunity for judicial review.

Even if Ramos's arguments were not foreclosed by the above, he would be unable to show that the removal proceeding was fundamentally unfair. To establish "fundamental unfairness," the defendant must show "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." El Shami, 434 F.3d at 664.

Due Process requires that the alien be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard. Id. at 665. These requirements were clearly satisfied at Ramos's removal proceeding. First, Ramos acknowledged service and receipt of the Notice to Appear, which plainly laid out the charges against him. Second, the Immigration Judge explained to Ramos at the start of the proceeding, in non-technical language, why he was there and what he was charged with:

> MR. RAMOS: [w]hat are the charges and what is the claim that you all had against me?
>
> THE COURT: The services allege that you're not a citizen or national of the United States but that your native is Mexico.
>
> MR. RAMOS: Yes.

> THE COURT: And furthermore, they allege that you were convicted for conspiracy to possess and distribute cocaine in District Court in Virginia.
>
> * * * *
>
> THE COURT: This is the court that basically decides whether or not you're allowed to stay in this country. Do you understand that?
>
> MR. RAMOS: Yes.

Trans. at 2, 5, Def.'s Mt. to Quash Ex. 1, Docket No. 27. Ramos was then given a fair opportunity to be heard. The Immigration Judge went so far as to postpone the proceedings to allow Ramos an opportunity to prove his contention that he was a "national of Virginia."[1]

Nor can it be said that Ramos suffered any prejudice. To show prejudice, a defendant must demonstrate a reasonable probability that, but for the errors complained of, he would not have been deported. U.S. v. Wilson, 316 F.3d 506, 511 (4th Cir. 2003).

Ramos's sole argument on this point involves an overly technical reading of the deportation statute. The Immigration and Nationality Act provides for the removal of an alien convicted of an aggravated felony or a drug trafficking offense at any time "after admission." 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1227(a)(2)(B)(i). Ramos contends that because he entered the United States illegally, but was later adjusted to the status of a lawful permanent resident, he was never "admitted" as that term is defined in 8 U.S.C. § 1101. The implication is that, had Ramos appealed his case all the way to the Fifth Circuit, that Court would have found that he was not removable.

As the Government correctly points out, this argument has been consistently rejected by the courts. See, e.g., Ocampo-Duran v. Ashcroft, 245 F.3d 1133, 1135 (9th Cir. 2001) (an alien is lawfully admitted when he is "lawfully accorded the privilege of residing permanently in the

---

[1] When the court reconvened, Ramos abandoned this assertion and conceded that he was not a U.S. national.

United States as an immigrant"). Moreover, it would lead to the absurd conclusion that an alien who entered the United States legally could be deported after commission of a felony, but one who entered illegally and was later granted permanent residency could not. There is no reason to believe that the Fifth Circuit would embrace such a contradiction.

IV. **CONCLUSION**

The Court finds that Ramos failed to exhaust his administrative remedies, that his removal proceedings did not improperly deprived him of the opportunity for judicial review, and that the proceedings were not fundamentally unfair. As such, he may not collaterally attack the order of removal that forms the predicate for the indictment against him. The Court will, by separate Order of even date, DENY Ramos's Motion to Quash the Indictment (Docket No. 27).

Dated this 31st day of March, 2011.

/s/
_____
Benson Everett Legg
United States District Judge